RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0055p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

SARAH R. LEE, on behalf of herself and all others similarly situated,

*Plaintiff-Appellant*,

*v.*

No. 19-3250

OHIO EDUCATION ASSOCIATION; AVON LAKE EDUCATION ASSOCIATION; NATIONAL EDUCATION ASSOCIATION,

*Defendants-Appellees*.

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:18-cv-01420—John R. Adams, District Judge.

Argued: December 6, 2019

Decided and Filed: February 24, 2020

Before: DAUGHTREY, CLAY, and GRIFFIN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Jonathan F. Mitchell, MITCHELL LAW, PLLC, Austin, Texas, for Appellant. Leon Dayan, BREDHOFF & KAISER, P.L.L.C., Washington, D.C., for Appellees. **ON BRIEF:** Jonathan F. Mitchell, MITCHELL LAW, PLLC, Austin, Texas, for Appellant. Leon Dayan, John M. West, Jacob Karabell, BREDHOFF & KAISER, P.L.L.C., Washington, D.C., Eben O. McNair, IV, Timothy Gallagher, SCHWARZWALD MCNAIR & FUSCO, LLP, Cleveland, Ohio, Jason Walta, NATIONAL EDUCATION ASSOCIATION, Washington, D.C., for Appellees. William L. Messenger, NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION, INC., Springfield, Virginia, for Amicus Curiae.

---

**OPINION**

---

GRIFFIN, Circuit Judge.

Plaintiff-Appellant Sarah Lee seeks a refund of "fair-share" fees she was required to pay to her public-sector union. Shortly after Lee filed suit, the Supreme Court held that such fees violate the First Amendment as a form of compelled speech. *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2459–60 (2018). Nevertheless, the district court granted the union's motion to dismiss, ruling that the union, as a private actor sued under 42 U.S.C. § 1983, was entitled to rely on its good faith in following existing Ohio law and prior Supreme Court precedent, which had expressly permitted fair-share fees.

We now affirm the district court's dismissal of plaintiff's federal cause of action because the union's good-faith defense bars the claim. We also affirm the district court's dismissal of plaintiff's state-law conversion claim because she failed to state a plausible claim for relief.

I.

A.

Plaintiff Sarah Lee is a public-school teacher in the Avon Lake School District. When Lee was hired by the school district, she was required to either join defendant Avon Lake Education Association[1] as a union member or pay fair-share fees as a non-member. This was so because the collective bargaining agreement between the school district and the Union included a fair-share clause, which was consistent with Ohio law and the Supreme Court's pronouncement endorsing fair-share fees in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977). Lee elected to pay fair-share fees rather than join the Union.

---

[1]The Avon Lake Education Association is affiliated at the state level with the Ohio Education Association and at the national level with the National Education Association, the other appellees. For ease of reading, we refer to these entities collectively as the "Union."

Anticipating that the Supreme Court would overrule *Abood*, Lee filed this putative class-action suit on June 25, 2018, asserting that the Union and various state actors had violated her constitutional rights by imposing compulsory fair-share fees as a condition of employment. Plaintiff raised claims under 42 U.S.C. § 1983, the Declaratory Judgment Act, 28 U.S.C. § 2201, and various state-law torts, including conversion. She sought a declaration that various provisions of Ohio law (which implemented fair-share fees) were unconstitutional, injunctive relief to prevent further transfer of her wages by the School District to the Union, and damages from the Union for the fair-share fees which she had already paid.

B.

Two days after Lee filed suit, the Supreme Court issued its decision in *Janus*. 138 S. Ct. 2448. The Court explained that fair-share fees resulted in non-members being "forced to subsidize a union, even if they choose not to join and strongly object to the positions the union takes in collective bargaining and related activities." *Id.* at 2459–60. The *Janus* court held that this practice violated the free speech rights of non-members "by compelling them to subsidize private speech on matters of substantial public concern." *Id.* at 2460. Therefore, the *Janus* court overruled its prior precedent, *Abood*, explaining that *Abood*'s endorsement of fair-share fees had been a "windfall" to public-sector unions. *Id.* at 2486. The Court in *Janus* said that "States and public-sector unions *may no longer* extract agency fees from nonconsenting employees." *Id.* (emphasis added). Accordingly, the Supreme Court reversed the judgment of the lower court and remanded for further proceedings consistent with its opinion. *Id.*

With *Janus* in hand, Lee voluntarily dismissed her claims against the state officials and did not oppose dismissal of the school district, leaving only her claims against the Union. Then, the Union moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that plaintiff's claims for injunctive and declaratory relief were moot, and that its affirmative defense of good-faith barred plaintiff's claims for money damages because it had followed Ohio law and Supreme Court precedent in collecting agency fees. The district court agreed and granted the motion to dismiss. Plaintiff timely appealed, contesting only the district court's dismissal of her § 1983 claim and state-law conversion claim.

## II.

We first address the district court's dismissal of plaintiff's § 1983 claim, which we review de novo. *In re NM Holdings Co.*, 622 F.3d 613, 618 (6th Cir. 2010).

## A.

As a preliminary matter, we must consider whether the Supreme Court's decision in *Janus* is retroactive. If it is not, then Lee's claim fails as a matter of law. *See Janus v. AFSCME, Council 31*, 942 F.3d 352, 359–60 (7th Cir. 2019) [hereinafter *Janus Remand*].

Certain language in the Supreme Court's opinion at least suggests that *Janus* was intended to be applied purely prospectively, rather than retroactively. For instance, the Court noted that public-sector unions had received a "considerable windfall" through their collection of fair-share fees during the *Abood* era. 138 S. Ct. at 2485–86. It continued, "[i]t is hard to estimate how many billions of dollars have been taken from nonmembers and transferred to public-sector unions in violation of the First Amendment. Those unconstitutional exactions *cannot be allowed to continue indefinitely*." *Id.* at 2486 (emphasis added). And ultimately, the Court concluded that "States and public-sector unions *may no longer* extract agency fees from nonconsenting employees." *Id.* (emphasis added). These forward-looking statements could be construed to support a purely prospective approach to the constitutional right announced in *Janus.*

But on the other hand, the Supreme Court has made clear that its default approach is full retroactivity. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("Our general practice is to apply the rule of law we announce in a case to the parties before us. We adhere to this practice even when we overrule a case." (citation omitted)). We thus agree with our sister circuits that "[r]ather than wrestle the retroactivity question to the ground," the most prudent course of action is to assume without deciding that the right recognized in *Janus* has retroactive application. *Janus Remand*, 942 F.3d at 360; *see also Danielson v. Inslee*, 945 F.3d 1096, 1099 (9th Cir. 2019) ("[W]e will assume that the right delineated in *Janus* applies retroactively and proceed to a review of available remedies."). We thus proceed to an evaluation of the remedies available to plaintiff.

B.

Even assuming the retroactivity of *Janus*, Lee's claim presents an "instance[ ] where [the] new rule, for well-established legal reasons, does not determine the outcome of the case." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758–59 (1995). Here, the good-faith defense constitutes "a previously existing, independent legal basis . . . for denying" a retroactive remedy. *Id.* at 759.

The good-faith defense has its origins in *Lugar v. Edmonson Oil Company*, 457 U.S. 922 (1982), where the Supreme Court altered the test for private-party liability for claims brought under § 1983, concluding that such claims were viable so long as (1) the claimed deprivation of constitutional rights "resulted from the exercise of a right or privilege having its source in state authority" and (2) the private-actor defendant could be "appropriately characterized as a 'state actor[ ].'" *Id.* at 939. In a footnote, the Court acknowledged that its holding could cause a private individual to be held responsible for following a state law subsequently declared unconstitutional. *Id.* at 942 n.23. The Court wrote that the "problem should be dealt with . . . by establishing an affirmative defense." *Id.*

Our court took notice of *Lugar* in *Duncan v. Peck*, 752 F.2d 1135, 1141–42 (6th Cir. 1985), although the case was decided on other grounds. Then, seven years later, the Supreme Court considered whether private actors sued under § 1983 could assert qualified immunity like their governmental counterparts. *Wyatt v. Cole*, 504 U.S. 158, 159 (1992). At the time, three of our sister circuits had extended qualified immunity to private actors, two had declined to do so, and only our court had recognized a good-faith defense for private actors following state law, as the *Lugar* court had suggested. *Id.* at 161 (collecting cases).

Ultimately, the *Wyatt* Court held that private parties were not entitled to qualified immunity. *Id.* at 164–67. It reasoned that qualified immunity was designed to "strike[ ] a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions." *Id.* at 167. Therefore, government actors needed qualified immunity to "preserve their ability to serve the public good." *Id.* But the

*Wyatt* court found the rationales for *Harlow*-style qualified immunity inapplicable to private parties:

> Although principles of equality and fairness may suggest . . . that private citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid should have some protection from liability, as do their government counterparts, such interests are not sufficiently similar to the traditional purposes of qualified immunity to justify such an expansion.

*Id.* at 168. Therefore, given that the question presented was limited to the applicability of qualified immunity, the Court declared that it could offer "no relief" to the private party defendants. *Id.* However, the Court again noted—as it had in *Lugar*—that it was leaving open whether private parties were "entitled to an affirmative defense based on good faith and/or probable cause." *Id.* at 169. On remand, the Fifth Circuit held that private persons who act under color of law may assert a good faith defense to § 1983 claims, and the Supreme Court denied certiorari. *Wyatt v. Cole*, 994 F.2d 1113, 1120 (5th Cir.), *cert. denied*, 510 U.S. 977 (1993).

Since *Wyatt*, a consensus has emerged among the lower courts that "while a private party acting under color of state law does not enjoy qualified immunity from suit, it is entitled to raise a good-faith defense to liability under section 1983." *Janus Remand*, 942 at 363; *see also id.* (collecting cases). It is not surprising then that the Seventh Circuit, the Ninth Circuit, and each of the district courts to have considered the precise issue before us have all concluded that the good-faith defense precludes claims brought under § 1983 for a return of fair-share fees collected under the *Abood* regime. *See Danielson*, 945 F.3d at 1097–98; *id.* at 1104 n.7 (collecting cases).

We now add our voice to that chorus. The Union was authorized by Ohio law and binding Supreme Court precedent to collect agency fees. "Until [*Janus*] said otherwise, [the Union] had a legal right to receive and spend fair-share fees collected from nonmembers as long as it complied with state law and the *Abood* line of cases. It did not demonstrate bad faith when it followed these rules." *Janus Remand*, 942 F.3d at 366. Accordingly, we hold that the district court properly granted the motion to dismiss plaintiff's § 1983 claim because the Union's reliance on existing authority satisfied the good-faith defense as a matter of law.

C.

Lee does not directly challenge the existence of the good-faith defense but marshals several arguments for why her claim should fall outside its scope. We do not find them persuasive.

She first styles her claim as one for "equitable restitution," akin to the refund of an unconstitutional tax or criminal fine, which she says must be returned even if collected in good faith. But "[t]he label which a plaintiff applies to [her] pleading does not determine the nature of the cause of action." *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 (6th Cir. 2003) (quoting *United States v. Louisville & Nashville RR Co.*, 221 F.2d 698, 701 (6th Cir. 1955)). Instead, we must look beyond the labels to "the substance of the allegations." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001).

The crux of Lee's complaint is that the Union violated her First Amendment rights by collecting mandatory agency fees because the fees resulted in her compelled subsidization of union speech with which she disagreed. *See Janus*, 138 S. Ct. at 2460. Thus, an award of damages would compensate plaintiff for the dignitary harm she suffered from being forced to subsidize the Union's speech, not to recoup fees which had been wrongfully taken—suggesting that her claim is legal in nature. *See Mooney v. Ill. Educ. Ass'n*, 942 F.3d 368, 370 (7th Cir. 2019); *Danielson*, 945 F.3d at 1102 ("Plaintiffs' constitutionally cognizable injury is the intangible dignitary harm suffered from being compelled to subsidize speech they did not endorse. It is *not* the diminution in their assets from the payment of compulsory agency fees.").

Moreover, the Supreme Court has instructed that "restitution in equity typically involves enforcement of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016) (citation and internal quotation marks omitted). Where the original funds are no longer identifiable, the claim "is a legal remedy, not an equitable one." *Id.* at 658 (emphasis omitted). The fees Lee seeks clearly fall in the latter category; "it is not the case that the agency fees remain in a vault, to be returned like a seized automobile." *Babb v.*

*Cal. Teachers Ass'n*, 378 F. Supp. 3d 857, 876 (C.D. Cal. 2019). Therefore, we view plaintiff's claim as arising in law and need not determine whether the good-faith defense applies to equitable claims.

Next, Lee argues that under *Wyatt*, the good-faith defense only applies if the most analogous tort to her claim was subject to a good faith defense at common-law. But in *Wyatt*, the Supreme Court discussed *immunity* and explained that it would evaluate whether Congress intended to confer immunity by "determining whether there was an immunity at common law . . . [for] the most closely analogous torts." *Wyatt*, 504 U.S. at 164. The *Wyatt* court "never said that the same methodology should be used for the good-faith defense." *Janus Remand*, 942 F.3d at 365; *see also Danielson*, 945 F.3d at 1100–01.[2]

Finally, plaintiff makes a last-ditch effort to salvage her federal claim, asserting that it was the union's burden to demonstrate its compliance with *Abood* to justify the good-faith defense, so the district court erred in granting the Union's motion to dismiss prior to discovery. We disagree. The good-faith defense simply requires that the allegedly unlawful conduct—the taking of agency fees—be done in good faith. There is no dispute that the Union was entitled to rely on existing Ohio law and the Supreme Court's decision in *Abood* to collect agency fees at the time the fees were deducted from plaintiff's wages. As succinctly put by the district court in *Mooney*, "[i]f Defendants improperly spent the fair-share fees, Plaintiff would have an independent *Abood* claim but it would not render the exaction of the fee an act in bad faith. Plaintiff cannot embed an *Abood* claim in a *Janus* claim and thereby shift the burdens of pleading, proof, and persuasion." *Mooney v. Ill. Educ. Ass'n*, 372 F. Supp. 3d 690, 706 (C.D. Ill. 2019); *see also Danielson*, 945 F.3d at 1105 ("Because Plaintiffs' claims arise from the Union's reliance on *Abood*, not allegations that the Union flouted that authority, the Union need not show compliance with *Abood*'s strictures to assert successfully a good faith defense."). We thus reject plaintiff's contention that the Union was required to establish compliance with *Abood* to invoke the good-faith defense to her claim under *Janus*.

---

[2]Even if we adopted the common-law-analogue rule, we agree with our sister circuits that abuse of process is the most analogous tort. *Janus Remand*, 942 F.3d at 365; *Danielson*, 945 F.3d at 1102. And because abuse of process was subject to a good-faith defense at common law, plaintiff's argument fails. *See Wyatt*, 504 U.S. at 164–65; *id.* at 172 (Kennedy, J., concurring); *id.* at 176 (Rehnquist, C.J., dissenting).

In sum, the district court correctly concluded that plaintiff's First Amendment claim under § 1983 was barred by the good-faith defense because the Union was entitled to rely on existing Ohio law and longstanding Supreme Court precedent to collect agency fees.

### III.

Lee also pleaded several state-law claims, including a tort claim for conversion, which the district court did not address before dismissing the action. Lee presents the following question for review: "Has the plaintiff stated a claim on which relief may be granted under the state-law tort of conversion?" For several reasons, we conclude that she has not.

We begin with Lee's complaint, where all seven of her state-law causes of action are contained within a single sentence: "Ms. Lee is also suing . . . under the state-law torts of conversion, trespass to chattels, trover, replevin, detinue, unjust enrichment, restitution, and any other state-law cause of action that offers relief." This practice violated the Federal Rules of Civil Procedure in two ways. First, plaintiff failed to "connect specific facts or events with the various causes of action she asserted." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013). This violated Rule 8(a)(2)'s requirement that she provide the defendants "adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)). She also failed to separate each of her causes of action or claims for relief into separate counts. This type of "shotgun pleading" violates Rule 10(b). *See Weiland*, 792 F.3d at 1323 n.13 (collecting cases); *Cincinnati Life Ins. Co.*, 722 F.3d at 947 (holding that one count of complaint, which raised five causes of action, was impermissible "kitchen sink" pleading).

But even ignoring these deficiencies, plaintiff's conversion theory fails as a matter of Ohio law as well. "[T]he elements of a conversion cause of action are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Dice v. White Family Cos.*, 878 N.E.2d 1105, 1109 (Ohio Ct. App. 2007) (citation omitted). Plaintiff's claim fails because fair-share fees were permissible under then-existing state and federal law, and

plaintiff was contractually obligated to pay them pursuant to the collective bargaining agreement—just as the Union was obligated to collect them. In other words, it was a condition of Lee's employment that she pay fair-share fees. She therefore had no right to ownership or possession of them at the time they were taken.

Accordingly, we affirm the district court's dismissal of plaintiff's state-law conversion claim. *See Hensley Mfg. v. ProPride Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) ("We may affirm the district court's dismissal of a plaintiff's claims on any grounds, including grounds not relied upon by the district court.").

## IV.

For the reasons explained herein, we affirm the judgment of the district court.